IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**CARMEN ELIZABETH MARRERO HERNANDEZ, et al.**,

    Plaintiffs

    v.

**ESSO STANDARD OIL DE PUERTO RICO, INC., et al.**,

    Defendants

Civil No. 03-1485 (JAG/GAG)

**OPINION AND ORDER**

This is a toxic tort case involving several federal and state law causes of action. Plaintiffs are a group of approximately one hundred residents and property owners from La Vega Ward, Barranquitas, Puerto Rico. Defendant Esso Standard Oil de Puerto Rico, Inc. ("Esso") operated a service station in said area for over fifty years until 1998, when the same was closed. Between 1940 and 1970, Esso installed several underground fuel storage tanks at the station. Plaintiffs allege that at undetermined times, the tanks discharged toxic substances into the ground water and subsurface area and soil of La Vega Ward where their properties were located. As a result thereof, plaintiffs sustained personal and property damages. Esso has not corrected the situation it caused. Thus, toxic substances still remain in the area, hence continuing the harm to the plaintiffs.

Before the Court's consideration is Esso's motion for partial summary judgment[1] and plaintiffs' opposition thereto[2]. In its motion, Esso contends that the Fourth, Fifth and Sixth causes of action are time-barred as to forty two of the plaintiffs since their respective one-year statute of limitations elapsed at the time the complaint in this case was filed. The Fourth Cause of action contains a damages claim under Section 19 of the Environmental Public Policy Act of Puerto Rico, P.R. Laws Ann. tit. 12 § 1139. The Fifth Cause of action contains a damages claim under Puerto Rico's nuisance statute, Article 277 of the Code of Civil Procedure, P.R. Laws Ann. tit. 32 § 2761.

---

[1] See Docket Nos. 85 and 140.

[2] See Docket Nos. 118 and 145.

**Civil No. 03-1485 (JAG/GAG)**                     2

The Sixth Cause of action contains a damages claim under Puerto Rico's tort statute, Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31 § 5141.

Plaintiffs oppose Esso's arguments as to each of the causes of action. As to the cause of action under the Environmental Public Policy Act they contend that the applicable statute of limitations is fifteen years, as the one year limitations period for ordinary tort actions is inapplicable. As to the cause of action under the nuisance statute, plaintiffs contend that since Esso has not abated the contamination it caused in La Vega Ward, the one year statute of limitations has not yet run. Finally, plaintiffs claim that any statute of limitations did not accrue until May 21, 2001, when the Commonwealth Environmental Quality Board released its findings on the La Vega Ward contamination caused by Esso. This was less than one year before the filing of the original complaint.

On May 6, 2005 the Court held oral argument on the pending motion and allowed the parties to subsequently file a summation of their arguments.[3] Having considered the facts not in dispute, as well as the applicable law, the Court will address Esso's arguments *seriatim*.

### ***Environmental Public Policy Act Claim***

Section 19 of the Environmental Public Policy Act provides that:

> Any natural or artificial person may bring an action for damages in the courts of justice against any other natural or artificial person based on damages sustained through violations of this chapter.

The Act does not contain an express statute of limitations. Plaintiffs thus contend that the corresponding limitations period is that contained in Article 1864 of the Civil Code, P.R. Laws Ann. tit. 31 § 5294, which provides a fifteen year period for personal causes of action for which the law does not specify a particular limitations term. Esso, on the other hand, contends that before resorting to Article 1864, the Court must determine whether any analogous cause of action does in fact have a statute of limitations. If such is the case, then the Court must borrow and apply said statute of limitations. Esso submits that the one year statute of limitations for tort causes of action under Article 1802 of the Civil Code provides the proper term to be applied here.

The Puerto Rico Supreme Court has clearly indicated that the borrowing of an analogous limitations period is the proper juridical norm when a statute is silent as to its prescriptive period.

---

[3]See Docket Nos. 197 and 201.

**Civil No. 03-1485 (JAG/GAG)**                              3

Maldonado Vega v. Russe Santiago, ___ D.P.R. ___, 2001 WL 122004 *5 (2001); Suárez Ruiz v. Figueroa Colón, 145 D.P.R. 142, 148-149 (1998); Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740, 743 (1981). In these three cases involving damages under state employment statutes, the Supreme Court determined that the most analogous statute from which to borrow the limitations period was Puerto Rico's general tort statute, Article 1802 of the Civil Code, which has a one year statute of limitations.

The Court understands that likewise here, the prescriptive period for an Article 1802 cause of action should be applied to a claim for damages under the Environmental Public Policy Act. Insofar as plaintiffs here are seeking damages to their persons and property, the most analogous statutory provision to be applied is Article 1802 of the Civil Code. The fact that the damages sustained by plaintiffs are the result of Esso's failure to comply with environmental laws and regulations is no different from the scenario in which damages are caused by a common law breach of duty which results in those same damages. Both instances ultimately involve a tort.

### *Nuisance Claim*

Puerto Rico's nuisance statute, found in Article 277 of the Code of Civil Procedure provides that:

> Anything which is injurious to health, indecent or offensive to the senses, or an obstruction to the free use of the property, so as to interfere with the comfortable enjoyment of life or property, or which disturbs the well-being of an entire neighborhood, or of a great number of people . . . constitutes a public nuisance which gives rise to an action. Such action may be brought by any person, public agency or municipality whose property was injuriously affected or whose personal well-being results lessened by said public nuisance; and the judgment may order that the same be enjoined, as well as decree indemnification for the prejudices . . .

The parties do not contest that the one-year statute of limitations for torts provided by Article 1868 of the Civil Code, P.R. Laws Ann. tit. 31 § 5298, applies to claims to recover damages stemming from a nuisance. Plaintiffs, however, contend that, because Esso has not abated the nuisance it created when it contaminated the La Vega Ward area, the limitations period has not began to run. The Court agrees with plaintiffs.

The Puerto Rico Supreme Court has recognized that a party who generates a nuisance has an obligation to abate the same. Mártir v. Municipio de San Sebastián, 106 D.P.R. 172, 174-175

**Civil No. 03-1485 (JAG/GAG)**  4

(1977); Fuentes v. Gulf Petroleum, S.A., 91 D.P.R. 559, 564-565 (1964). Consequently, the statute of limitations for nuisance damages contained in Article 277 of the Code of Civil Procedure does not commence to run while the nuisance can be abated. Mártir, supra at 174-175; Fuentes, supra at 565; Casiano Sales v. Lozada Torres, 91 D.P.R. 488, 499 (1964). More so, Article 277 was enacted to provide a mechanism whereby an aggrieved party could obtain a judicial cease and desist order as to the nuisance, and subsequently be compensated for damages sustained during its duration. Fuentes, supra at 565; Casiano Sales, supra at 499.

The Supreme Court's jurisprudence discussing abatement under Article 277 involves instances where the nuisance was continuous and ongoing in nature at the time the request for injunction and damages was filed before the court. For example, in Mártir, the plaintiff's farm was constantly exposed for more than nine years to gases and vermin from a neighboring landfill. In Fuentes, the plaintiff's business was continuously affected on a day to day basis from waters containing oil and grease from defendant' gas station. In Casiano Sales, the plaintiff's property was subject during a continuous four year period to noise and paint particle pollution stemming from defendant's factory, which lasted fifteen hours a day, six days a week.

This Court concludes that under Puerto Rico law the abatement doctrine equally extends to cases such as the present in which a toxic spill has occurred, but the ensuing contamination has not been abated by the tortfeasor. Although no Puerto Rico Supreme Court case squarely addresses the issue, decisions of the state Circuit Court of Appeals provide support for the Court's interpretation of local law. See, e.g., West v. American Te. & Tel. Co., 311 U.S. 223, 236-238 (1940)(holding that federal court must apply rule announced by intermediate appellate court unless it is convinced by other persuasive data that state supreme court would decide otherwise, and courts cannot simply apply better rule that it thinks the state supreme court ought to follow); Wassall v. DeCaro, 91 F.3d 443, 445 (3rd Cir. 1996)("As a federal court [applying state law], we must do what we predict the [state] Supreme Court would do.  In making this determination, we give proper regard to the opinions of [the state's] intermediate courts")(internal citations omitted); Roberts v. Anderson, 733 F. Supp. 1040, 1049 (E.D. La. 1990)("When a federal court is *Erie*-bound to apply state law [ ], the court must follow intermediate appellate state court opinions in determining state law, where there

**Civil No. 03-1485 (JAG/GAG)**                5

is no persuasive data that the state supreme court would hold to the contrary"); see also Joseph W. Glannon, Civil Procedure Examples and Explanations 173 (4th ed. 2001)("The Supreme Court has since suggested, however, that federal judges have more flexibility in determining state law under *Erie*. . . . the federal judge must predict how the issue before it would be decided by the state supreme court if that court decided the issue today.  In making that prediction, the judge may look to all available date, including decisions from the state's lower courts, developing trends in the area of law that cast doubt on the earlier decisions, and dicta or legislative developments that weaken (or reaffirm) the existing precedents.  The judge is not free to make up state law, but he is entitled to make an educated judgment on what rule the state supreme court would apply to the case today, rather than merely parroting what the rule was when the last case on point was decided")(internal citations omitted).

At present, no recent Puerto Rico Supreme Court case suggests that the continuing nuisance doctrine has eroded or does not provide the proper rule of law.  The Court is also unaware of any legislative enactment which would otherwise alter current law on this matter.  To the contrary, intermediate state appellate court decisions consistently evidence that the continuous nuisance doctrine remains unchanged, and that it applies to instances, such as here, where a nuisance remains unabated.

In Cardona v. Santiago Hernández, No. KLAN0301225, 2004 P.R. App. Lexis 710 (May 21, 2004), the defendants illegally built a second story to their home.  Nearly ten years later, plaintiffs successfully commenced an action for nuisance before the Court of First Instance.  On appeal, defendants claimed error, as the action for damages was barred by the Civil Code's one year statute of limitations.  The Circuit Court rejected said argument, holding that because the nuisance had not been abated during the ten years it was considered continuous and ongoing.  Id. at * 26.  Hence, plaintiffs' cause of action for damages was properly before the court.  Id..  In its opinion, the Court cited the Supreme Court cases of Capella v. Carreras, 57 D.P.R. 258 (1940) and Arcelay v. Sánchez, 77 D.P.R. 824 (1955) for the proposition that in instances of continuous acts of nuisance, the cause of action is renewed constantly.  Id. at * 25.

In Morales Martínez v. Caribbean Petroleum Corp., No. KLCE9500675, 1996 P.R. App.

**Civil No. 03-1485 (JAG/GAG)**                6

Lexis 587 (April 24, 1996) the defendant was responsible for an underground oil spill in one of its gas stations. Within a reasonable time thereafter, defendant entirely abated and corrected the nuisance. More than one year after the abatement, several plaintiffs sought to join an existing and timely suit for nuisance damages. The Court of First Instance permitted them to do so and defendant appealed. The Circuit Court reversed said ruling, concluding that the Article 277 damages action was untimely commenced by the new plaintiffs. Citing Capella and Arcelay, supra, it noted that the nuisance was no longer in effect, thus was not continuous in nature. Id.. At * 7-8. More so, the effects of the spill had been corrected by defendant. Id. at * 9.

Commentators learned in Puerto Rico law are also in accord with this Court's interpretation of Commonwealth law. Doctor José A. Cuevas Segarra, in his treatise La Responsabilidad Civil y el Daño Extracontractual en Puerto Rico (Publicaciones J.T.S. 1993) at 279, is of the opinion that the continuous nuisance doctrine established by the Supreme Court in Capella and Arcelay, supra, applies also to cases in which the nuisance damage is the consequence of the inactivity of the tortfeasor in removing the same. The late Professor Herminio M. Brau Del Toro, in his treatise Los Daños y Perjuicios Extracontractuales en Puerto Rico (Publicaciones J.T.S. 2nd ed. 1986) at 583, notes that in the case of continuous nuisances the limitations clock is constantly reset. A staunch critic of said rule, Professor Brau nonetheless notes at page 658 of his work that the prescriptive period of Article 277 does not commence to run until the nuisance ceases, and that an aggrieved party may then recover damages sustained since the nuisance came into effect. Furthermore, Professor Brau agrees that a nuisance is continuing in nature where the party causing the same fails to take corrective measures as to the same. Id. at 644-645.

Esso properly brings to the Court's attention the case of M.R. (Vega Alta), Inc. v. Caribe General Electric Products, Inc., 31 F. Supp. 2d 226 (D.P.R. 1998) in support of its position that nuisance tort claims are subject to a one year statute of limitations. Said case involved a toxic tort scenario analogous to that at bar. Chief Judge Fusté, citing Arcelay and Capella, supra, held that plaintiffs' Article 277 nuisance claim was time-barred because the defendants' release of hazardous substances had occurred nine years earlier. Id. at 239-240. In doing so, the Judge rejected the plaintiffs' argument that a continuing nuisance existed because the defendants' pollutants continued

**Civil No. 03-1485 (JAG/GAG)**				7

to flow into their properties. Id.. Rather, he reasoned that the harmful effect of the nuisance was not caused by the defendants' constant action; defendants had only ignited the catalyst. Id. at 240. A careful reading of Chief Judge Fusté's opinion in M.R. (Vega Alta), Inc. indicates that, contrary to here, plaintiffs in said case did not advance to the Court the concept of nuisance abatement espoused by the Supreme Court in its jurisprudence  Hence, the Court then was not in the same position as it is now to rule on the matter.

In sum, appellate case law and works of commentators sustain this Court's interpretation of Puerto Rico law as to the nuisance statute's prescriptive term. When a nuisance is not abated as in Cardona v. Santiago Hernández, supra, it is considered continuous, and the statute of limitations does not commence to run until abatement occurs. Contrariwise, where the nuisance is abated to the point that it ceases, as in Marrero Martínez v. Caribbean Pertoleum Corp., supra, the statute of limitations is activated and the plaintiff has one year to bring his suit.

### *Article 1802 Negligence Claim*[4]

Puerto Rico law provides a one year statute of limitations for tort claims brought under Article 1802 of the Civil Code. Article 1868 of the Civil Code, P.R. Laws Ann. tit. 31 §5298, bars any action for recovery of tort damages brought more than one year from the time the aggrieved party has knowledge of the injury. Torres v. E.I. Dupont De Nemours & Co, 219 F.3d 13, 18 (1st Cir. 2000). A plaintiff has knowledge of an injury when he has (1) "notice of the injury" and (2) "notice of the person who caused it." Colón Prieto v. Geigel, 115 D.P.R. 232, 246 (1984); Torres, supra. Notice of the injury exists when there exist some outward or physical signs through which the aggrieved party may become aware and realize that he has suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed. Delgado Rodríguez v. Nazario de Ferrer,121 D.P.R. 347 (1988); Torres, supra at 19. Once a plaintiff is on notice of the injury, he may not wait for his injury to reach its final degree of development and postpone the running of the period of limitation according to his subjective appraisal and judgment.

---

[4] The statute of limitations discussion herein equally applies to plaintiffs' Environmental Policy Protection Act claim.

**Civil No. 03-1485 (JAG/GAG)** 8

Ortiz v. Municipio de Orocovis, 113 D.P.R. 484, 487 (1982); Torres, supra. Once a plaintiff is made aware of facts sufficient to put him on notice that he has a potential tort claim, he must pursue that claim with reasonable diligence, or risk being held to have relinquished his right to pursue it later, after the limitation period has elapsed. Rodríguez Suris v. Montesinos, 123 F.3d 10, 16 (1st Cir. 1997).

In the case at bar, Esso submits that four events took place which put plaintiffs on dual notice for purposes of the starting of the limitations clock. First, on September 14, 1998, more than four years prior to the filing of the complaint, forty plaintiffs signed their names to a letter authorizing third party defendant Carlos M. Belgodere Pamies to represent them "in scientific capacity before government agencies in the Esso Barranquitas contamination case." Second, on January 14, 1999, again, more than four years prior to the filing of the complaint, forty-five plaintiffs signed a letter to the president of the Puerto Rico Environmental Quality Board informing him that "for more than twenty years we have suffered due to the emissions into the river from the [Esso Service Station]." These plaintiffs further state in said letter that they had "been informed that the reports from Esso to the Environmental Quality Board establish the presence of Lead, Benzene, and Toulene in amounts exceeding the limits allowed by your agency." Third, on May 25, 2000, nearly three years prior to the filing of this suit, thirty-seven plaintiffs, represented by attorney Julio Gil de la Madrid, moved to intervene in an administrative proceeding at the Environmental Quality Board pertaining to the Esso contamination of La Vega Ward. In their application to intervene, plaintiffs alleged that "the community is being affected directly by emanations of product (gasoline/diesel) from the former service station." Fourth, in a letter dated August 16, 2000, attorney Gil de la Madrid, on behalf of thirty-five plaintiffs wrote to Esso informing he would file suit "for the damages that [plaintiffs] have suffered . . . as a result of the discharge of toxic substances."

The plaintiffs do not contest these four events, nor the contents of the documents at issue. They do contend, however, that none of these four events triggered the one year limitations period, which applies to their Article 1802, as well as Environmental Policy Protection Act claims for damages. Rather, they insist, that due notice accrued later, when the Environmental Quality Board issued detailed findings about the contamination caused by Esso. Plaintiffs argue that, contrary to

**Civil No. 03-1485 (JAG/GAG)**                 9

the run of the mill tort in which the damage and injury can be readily ascertained, an environmental tort such as this requires thorough scientific investigation, which can take considerable time. In addition, plaintiffs claim that Esso purposefully misled them as to the magnitude of the contamination, which again was not known until the Environmental Quality Board issued its findings.

The Court concludes that by virtue of the publication of three documents at issue the Article 1802 and Environmental Public Policy Act statutes of limitations commenced to run. These documents evidence that plaintiffs had sufficient adequate notice of their purported injuries, as well as notice of Esso being the tortfeasor. Colón-Prieto, 115 D.P.R. at 244-46. In their January 14, 1999 letter to the Puerto Rico Environmental Quality Board ("EQB"),[5] forty-five of the residents of La Vega Ward specifically identify the "Esso service station located on Highway 156 at km. 14," as the source of the toxic discharges. Moreover, in said letter these residents specifically claim that such emissions have been contaminating a local river "[f]or more than twenty years." Hence, the forty-five residents who signed said letter recognized that they knew of the toxic emissions and their source. Pursuant to Colón-Prieto, this was sufficient for the applicable one-year statute of limitations to run.

Moreover, on two additional occasions the plaintiffs again demonstrated their knowledge of the damage and its culprit. The first was through the motion to intervene in the local administrative procedure related to the contamination, dated May 25, 2000.[6] In said motion, thirty-seven plaintiffs acknowledged the emanation of gasoline and diesel fuel by the "former service station La Vega Esso Service Center" into a local river and adjacent lands. The plaintiffs further state that said contamination "is directly affecting" the community, as well as "impacting their properties... and dwellings." In addition, almost three months later, thirty-five plaintiffs through attorney Gil-de-Lamadrid directly wrote Esso informing of their intent on filing a civil suit "for the ongoing violations as well as for action to restrain toxic substances discharge in the community potable

---

[5] **Exhibit C** to Docket No. 85.

[6] **Exhibit D** to Docket No. 85

**Civil No. 03-1485 (JAG/GAG)**                    10

waters, and for damages that they have suffered and continue suffering."[7]

The plaintiffs' contention that environmental tort cases require a different rule must be rejected, since such a ruling would amount to a judicial modification of the substantive tort law of Puerto Rico. The soundness of the present state of law is not a matter for this Court to dwell upon. The Supreme Court has not indicated in any manner that prescription of environmental torts is to be treated differently from ordinary torts. "This [federal] Court will [thus] not create or extend [Puerto Rico] law to recognize such a novel duty; that is the bailiwick of [Puerto Rico's] courts and legislature." Cooper Industries, Inc. v. Agway, Inc., 987 F. Supp 92, 104 (N.D.N.Y. 1997).

Alternatively, plaintiffs contend that due to Esso's purposeful concealment of the nature and gravity of the contamination, the statute of limitations did not begin to accrue until May 21, 2001, the date on which the Environmental Quality Board issued its administrative findings. Plaintiffs thus request the Court to apply the doctrine of equitable tolling, which, under Puerto Rico law may be applied in situations where a damage was willfully and wrongfully concealed by its author. Benítez-Pons v. Commonwealth of Puerto Rico, 136 F. 3d. 54, 61 (1ST Cir. 1998). In order for the Court to allow the plaintiffs' equitable tolling claim, however, they must demonstrate that they were actively misled or prevented in some way from discovering facts essential to their lawsuit. Rivera-Ramos v. Román, 156 F. 3d. 276, 282 (1ST Cir. 1998).

---

[7] **Exhibit F** to Docket No. 85. The plaintiffs argue that the August 16, 2000 letter from attorney Gil de Lamadrid to Esso, is inadmissible hearsay pursuant to Fed. R. Evid. 802. The plaintiffs contend that Esso's failure to set forth evidence to the effect that counsel had personal knowledge of the facts stated in said letter warrants exclusion. Fed. R. Evid. 801 (D)(2)(D) excludes from the definition of hearsay statements made by a "party's agent [] concerning a matter within the scope of the agency or employment, made during the existence of the relationship." In the case at bar, the plaintiffs have not alleged that at the time of the August 16, 2000 letter Gil de Lamadrid was not their attorney, nor that such communication was beyond the scope of his agency. In fact, Gil de Lamadrid attached a list of the thirty-five claimants on whose behalf he addressed Esso to the letter. Hence, counsel's statements, made in furtherance of his relationship as the plaintiffs' attorney, and during the course of said relationship, are "admissions", which, under Fed. R. Evid. 801 (D)(2)(D), are not considered hearsay. See Shepp v. Uehlinger, 775 F. 2d. 452, 455 (1ST Cir. 1985). Moreover, the plaintiffs contention that such statements need be based on counsel's personal knowledge has been rejected by the First Circuit. See Union Mutual Life Insurance, Co. v. Chrysler Corp., 793 F. 2d. 1, 8 (1ST Cir. 1986).

In support of their equitable tolling request, the plaintiffs point to various instances in which Esso downplayed the severity of the contamination in order to dissuade possible claimants from taking legal action. Examples of such conduct include: publishing an open letter in a local newspaper in October 1998 in which Esso claimed it had only found two gallons of leaded gasoline in the area, and blaming the station operators for the spill; reciting prepared answers that downplayed the contamination's severity when asked about the same; and knowingly misstating the amount of contamination found in the affected area at some point in May 2001. In addition, the plaintiffs have provided various statements under penalty of perjury in which they contend that at all times Esso represented to them that the effect of the contamination was minimal, and that they should not worry.

Even assuming the above alleged conduct on the part of Esso to be true, the Court concludes that the plaintiffs nonetheless possessed sufficient information to pursue their cause of action. The evidence of record shows that as early as September 14, 1998, the area residents were concerned enough to retain the services of an expert to investigate the situation. Esso did not dissuade in any way this expert's hiring. Subsequently, the plaintiffs acknowledged in their intervention before the Environmental Quality Board and in their letter to Esso the existence of the contamination and its link to defendant. The plaintiffs in effect, thus, had all the required information to bring suit, namely, that the contamination occurred to the surrounding area and water way, that damages to their persons and property arose as a consequence of Esso's fault and/or negligence, and that a causal connection existed between Esso's fault and/or negligence and their damages. See Torres v. Kmart Corp., 233 F. Supp. 2d. 273, 277-78 (D.P.R. 2002) (noting that the three basic elements of a cause of action under Article 1802 are "the presence of a physical or emotional damage; that the damage arose as a consequence of a negligent or intentional act or omission of the defendant; and that there is a causal nexus between the damage suffered and said act or omission."). Hence, the Court is dissuaded from extending equitable relief to the plaintiffs because their conduct evinced that they did in fact possess the essential information for their cause of action. Torres-Ramírez v. Bermúdez-García, 898 F. 2d. 224, 229 (1ST Cir. 1990). While Esso's purported statements minimizing the damage occurred may have hindered the plaintiffs from discovering the full extent of the damage, such conduct is insufficient to warrant equitable tolling and preclude accrual of the applicable statute of limitations.

**Civil No. 03-1485 (JAG/GAG)**                    12

See Delgado Rodríguez,115 D.P.R. at 246. Moreover, Plaintiffs do not allege that they were precluded from seeking medical assistance and help, nor that, at the time, the damages were not discoverable by a physician. Contra Colón Prieto, 115 D.P.R. at 245-46 (where plaintiff was effectively dissuaded by defendant from seeking further medical evaluations).

## *Conclusion*

Given the above ruling, the Court hereby **GRANTS in part and DENIES in part** Esso's motion for partial summary judgment (Docket No. 85). The Court grants summary judgment as to plaintiffs' Environmental Protection Policy Act and Article 1802 claims, hereby dismissing the same on prescription grounds.[8] The Court denies summary judgment as to the plaintiffs' nuisance claim.

**SO ORDERED.**

In San Juan, Puerto Rico this May 20TH, 2005.

S/Gustavo A. Gelpí

GUSTAVO A. GELPI
United States Magistrate-Judge

---

[8] The plaintiffs whose claims under the Environmental Protection Policy Act and Article 1802 are hereby dismissed are: Angel M. Berríos, Magda Berríos-Guzmán, Andrea Berríos-Santiago, Nilsa M. Cintrón-Ortiz, Andrés Cintrón-Zayas, Antonia Colón-Díaz, Luz M. Delgado-Ortiz, Bienvenida Hernández-Luna, Teófilo Maldonado-Marrero, Angel R. Marrero-Hernández, Carmen E. Marrero-Hernández, Carmen R. Marrero-Hernández, Eneida Marrero-Hernández, Leticia N. Marrero-Hernández, Ramón Marrero-Pagán, Héctor Negrón-Marrero, Raúl Nieves, Rafael Padilla-San Ignacio, Juán C. Rivera-Cintrón, Aida Rivera-Colón, Blanca N. Rivera-Colón, Danny Rivera-Colón, Gerardo Rivera-Colón, Juan C. Rivera-Cintrón, Auda Rivera-Colón, Blanca N. Rivera-Colón, José Rivera-Lugo, Tania Rivera-Marrero, Heriberto Rodríguez-Rivera, Carlos A. Saez Alvarado, Carlos Saez-Cintrón, Suhein Saez-Cintrón, José A. Santiago-Rodríguez, Arleen Santini-Vilches, Miriam Vilches-Zayas, Yesenia Zaes-Cintrón, José R. Zayas-Berríos. In addition, the claims of the conjugal partnerships Nieves-Marrero, Rivera-Marrero, Saez-Cintrón, Marrero-Hernández, Maldonado-Marrero, and that of the Estate of Gerardo Rivera-Colón are also dismissed. The above-named plaintiffs are the parties to this case who appear named in Esso's **Exhibits C, E** and **F** to its summary judgment motion (Docket No. 85).