# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**CARMEN MARRERO HERNANDEZ, et al.,**

**Plaintiffs,**

v.

**ESSO STANDARD OIL COMPANY (PUERTO RICO); CARLOS RODRIGUEZ PEREZ,**

**Defendants.**

**CIVIL NO. 03-1485 (GAG)(JA)**

## OPINION AND ORDER

Plaintiffs, residents and/or property owners at La Vega Ward, Barranquitas, filed suit against Esso Standard Oil Company (Puerto Rico) ("Esso")[1] under, *inter alia,* section 6972(a)(1)(B) of the Resource, Conservation, and Recovery Act, 42 U.S.C. §§ 6991 et seq ("RCRA"). Under this section of the RCRA private citizens can sue a defendant that has contributed to the disposal of "any solid hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Plaintiffs contend that the commingled mixture of contaminants released from the corroded underground storage tanks owned by Esso and co-defendant Carlos Rodriguez's operations located at the Esso Service Station at La Vega Ward may present such a danger to the La Vega environment and community. Presently before the court is defendant Esso's motion to exclude plaintiffs' expert testimony regarging the existence of a health risk in La Vega Ward under <u>Daubert</u> principles of admissibility (Docket No. 909). After considering the pleadings and pertinent law, defendant's motion is **DENIED**.

The admission of expert testimony is governed by Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to

---

[1] The complaint was subsequently amended to include Carlos Rodríguez Pérez, one of the persons responsible for the operation of the Esso service station implicated in this suit. <u>See</u> Second Amended Complaint, Docket No. 200-2.

**Civil No. 03-1485 (GAG)(JA)**

understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702. The Supreme Court asserted in *Daubert* that Rule 702 imposes "a gate-keeping function on the trial judge to ensure that an expert's testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993)). The review for reliability encompasses an assessment of "whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S.at 592-93. As to the relevancy criterion, "expert testimony must be relevant not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998) (citation omitted) (citing Daubert, 509 U.S. at 591-92). The Rule 702 inquiry is a "flexible one, and there is no particular procedure that the trial court is required to follow in executing its gatekeeping function under Daubert." United States v. Diaz, 300 F.3d 66, 74 (1st Cir. 2002) (citing Daubert, 509 U.S. at 594). Moreover, "[i]t is well-settled that 'trial judges have broad discretionary powers in determining the qualification, and thus, admissibility, of expert witnesses.'" Diefenbach v. Sheridan Transp., 229 F.3d 27, 30 (1st Cir. 2000) (quoting Richmond Steel Inc. v. Puerto Rican Am. Ins. Co., 954 F.2d 19, 20 (1st Cir. 1992).

      In the instant case, the court concludes that plaintiffs' experts are qualified to render testimony as to the existence of a health risk at La Vega, and that such testimony is both reliable and relevant to the facts under dispute. These experts have opined that the toxins at La Vega have caused the area's inhabitants to suffer a series of ailments and that their continued exposure near the station puts them at risk of greater injury. Though Esso points out that none of these experts is an

**Civil No. 03-1485 (GAG)(JA)**

epidemiologist or a toxicologist, it has been held that a witness need not be a specialist to qualify as an expert. See Mitchell v. United States, 141 F.3d 8, 15 (1st Cir.1998) (citing Letch v. Daniels, 401Mass. 65, 514 N.E.2d 675, 677 (Mass.1987) ("A medical expert need not be a specialist in the area concerned . . .")). Plaintiffs have presented evidence of their experts' education, knowledge, and experience in the medical fields related to their testimony, enough to convince this court of their qualifications. As to reliability, in rendering their opinions, plaintiffs' experts have used the method of differential diagnosis, which is a standard scientific technique, widely used in medicine, for identifying the cause of a medical problem and provides a valid foundation for an expert opinion under Rule 702. See Baker v. Dalkon Shield Claimants Trust, 156 F.3d 248, 252 (1st Cir.1998) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 755 (3d Cir. 1994); Feliciano-Hill v. Principi, 439 F.3d 18, 25 (1st Cir. 2006). Their conclusions were reached through reliable differential diagnoses, involving physical examinations, the taking of medical histories, and the review of clinical and laboratory tests. Esso challenges this methodolgy because the experts did not rule out all alternatives or the possibility that the diseases developed idiopathically. However, Daubert, 509 U.S. at 590, and Federal Rule of Evidence 401 merely require that evidence make a contested fact more likely than it would be without the evidence. See Baker, 156 F.3d at 253; see also Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 202 (4th Cir. 2001) (citing Westberry v. Gislaved Gummi AB, 261 F.3d 257, 265 (4th Cir. 1999) ("A medical expert's opinion based on differential diagnosis normally should not be excluded because the expert has failed to rule out every possible alternative cause of a plaintiff's illness.").

Esso further contends that the procedures used by these experts amount to pure guesswork because, by not supplementing their diagnosis with objective, quantified test data evincing that gasoline constituents exist in the air or soil at La Vega at above regulatory levels, they are *assuming* the existence of toxicologically significant exposures. As plaintiffs have pointed out, however, the factual underpinings of an expert opinion affect the weight and credibility of the testimony, not its admissibility. Int'lAdhesive Coatings Co. v. Bolton Emerson Int'l, Inc., 851 F.2d 540, 545 (1st Cir.

**Civil No. 03-1485 (GAG)(JA)**

1988).  Having convinced the court that their particular differential diagnoses were based on sufficient facts and data, challenges to the methodology used by plaintiffs' expert witnesses shall be adequately addressed by cross-examination.  See Diaz, 300 F.3d at 76-77; Daubert, 509 U.S. at 596 (noting that "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"); see also Ruiz-Troche, 161 F.3d at 85 (citations omitted) ("Daubert does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct.  As long as an expert's scientific testimony rests upon 'good grounds, based on what is known,' it should be tested by the adversary process . . .").  Because defendant has not shown why that cannot be the case here, the court will not exclude plaintiffs' expert testimony for failure to supplement their findings with dose and exposure data.

Finally, as regards relevance, expert testimony that members of the La Vega community have had their bronchial asthma condition worsen by the toxins emanating from the station, have potentially suffered a cognitive defect due to exposure to those toxins, or have developed chronic irritant contact determititis as a consequence, if credible, would certainly aid this court in determining whether the conditions at La Vega Ward may pose an imminent threat to human health.

For the aforementioned reasons, defendants' motion *in limine* to exclude the testimony of plaintiffs' experts (Docket No. 909) is hereby **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 29th day of January, 2009.

*S/ Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge